## Commonwealth *v.* .Blair, Appellant.

*Criminal law—Fortune telling—Act of April 8, 1861, P. L. 270—Evidence—Insufficiency.*

In the trial of an indictment for the suppression of fortune telling, the use of prayers to heal certain ailments, reading the Bible, and the advice to go through certain prescribed conduct does not constitute a violation of the Act.

Many people resort to religious healers for the cure of disease and contribute money to those who minister to them for such purpose. It was not to restrain such religious organizations from putting in practice their beliefs in this regard that the act of assembly under which the defendant was indicted was passed. The defendant may have violated some law, but where there is no evidence to sustain a conviction of the misdemeanor of fortune telling for which he was indicted, judgment will be reversed.

Argued October 4, 1927. Appeal No. 183, October T., 1927, by defendant from judgment of Q. S. Chester County, January T., 1927, No. 120, in the case of Commonwealth of Pennsylvania v. David B. Blair. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Reversed.

Indictment for violation of the Act of April 8, 1861, P. L. 270. Before AIRD, P. J., 37th Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were various rulings on evidence and refusal to direct a verdict in favor of the defendant.

*Truman D. Wade,* for appellant.

*H. L. Sproat,* District Attorney, for appellee.

OPINION BY TREXLER, J., December 15, 1927:

The defendant is charged with the violation of the first section of the Act of April 8, 1861, P. L. 270, being an act entitled "For the suppression of Fortune Telling and similar purposes."

The charge is that the defendant did "for gain or lucre, pretend to effect certain purposes by spells, charms, necromancy and incantations." A state policeman and a newspaper reporter called at the defendant's house which had on the outside a sign, "Rev. David B. Blair." They had an interview with the defendant who told the policeman, "You don't have any rest, any ambition," and the witness agreed to this statement. Defendant opened a book on the table and then put his hands on the policeman's head and mumbled something. He took his arms and stretched them out, after which he knelt and held his head in his right hand and placed the other on witness' limbs. During this time the defendant uttered some words in a low tone of voice. Witness asked the defendant whether anyone could cast spells upon him and he answered "No." He told witness to put a pinch of salt in his shoes and also to place some salt in his bed in the form of a cross and he could then rest. When asked whether there was any charge, he said he took what the visitors would leave.

The reporter complained of stomach trouble and defendant caused him to go through certain motions and passed his hands over certain portions of his body. The defendant placed his hands on the book, which witness says, he imagined was a Bible, (of similar size as the Bible produced in court by the defendant) and read in a low tone, so low that the witness could not understand him.

One witness testified that he visited the defendant and was treated for nervousness. The defendant rubbed him and directed the witness to bring his prayer book and beads (rosary) and placed these in

his hands. Defendant told the witness that some woman had bewitched him and that he should not go to her house to eat or sleep, but there was no testimony that any treatment was given to break the spell. This is practically all the testimony that was offered in behalf of the Commonwealth which bore upon the crime charged.

It developed through the evidence produced by the state that defendant was a religious healer. The title which he bore was "Reverend" and the walls of his office were adorned with certificates showing his connection with the National Spiritualist Alliance and his authority to act as a healer. The church of which he was the assistant minister was under the state organization of spiritualist churches chartered by the State of Pennsylvania. There is no evidence that defendant pretended to heal by any of the means laid in the indictment. The advice he gave that the witness should put a pinch of salt in his shoes and also in his bed was foolish, but he did not furnish the salt, nor did he claim that the salt to be used was any but ordinary salt. There was no evidence that he used incantations or spells. He did not use any supposedly magical formula or hokus-pokus. He assumed the usual attitude of prayer and very evidently was under the impression that he had (or at least pretended that he had) power to heal given to him from a higher source. We cannot determine whether he was sincere. There are pretenders in every form of religion. We must accord to anyone the right to believe and assert that prayer will heal the sick. There are thousands of people who resort to religious healers for the cure of disease and contribute money to those who minister to them for such purpose. It was not to restrain such religious organizations from putting in practice their beliefs in this regard that the act of assembly under which the defendant was indicted was passed. He may have vio-

lated some law, but we are all of the opinion that there was no sufficient evidence to sustain a conviction of the misdemeanor for which he was indicted.

The judgment is reversed and the defendant is discharged without day.